512 So.2d 579 (1987)
STATE of Louisiana,
v.
Pierre EDOUARD.
No. CR87-211.
Court of Appeal of Louisiana, Third Circuit.
July 22, 1987.
Jeffrey M. Bassett, Opelousas, for defendant-appellant.
Donald Richard, Asst. Dist. Atty., Opelousas, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and FORET, JJ.
DOMENGEAUX, Judge.
Appellant, Pierre Edouard, was charged by a bill of information with two counts of *580 burglary of an inhabited dwelling, violations of La.R.S. 14:62.2. Appellant was tried before a jury and found guilty on both counts. A pre-sentence investigation was ordered. Appellant was sentenced to ten years on each count to run consecutively. The second sentence was suspended and appellant is to be placed on probation for five years after serving the initial sentence.

FACTS
On December 16, 1984, at about midnight, Jean Louis Roger returned to his home on Beulah Street in Eunice, Louisiana, to discover that it had been burglarized. The back door had been broken down and the house ransacked. The only thing Mr. Roger noticed missing was his bankbook and possibly some deposit slips or bank statements he kept with his bankbook.
The next day Roger went to the bank, informed them that his bankbook had been stolen and made a deposit. He was given a bank deposit slip and he returned home. While Roger was home, defendant, whom Roger had seen before, but with whom he had never spoken, approached Roger and asked him why he was not going to work.
The following day Mr. Roger went to work. When he returned home that evening he discovered that his home had again been broken into. The same rear door had been used to gain entry and, again, the only items missing were papers he had received from his bank. Mr. Roger's account was frozen by the bank when he informed them that his bankbook had been stolen.
On December 18, 1984, defendant entered a branch of Mr. Roger's bank in possession of papers belonging to Mr. Roger, and attempted to withdraw money from Mr. Roger's account. The bank teller, realizing the account had been frozen, stalled defendant until the police arrived. When the police arrived defendant ran out the door leaving the papers with the teller. He was apprehended shortly thereafter and placed under arrest.

ASSIGNMENT OF ERROR NO. 1
Appellant claims in his initial assignment of error that the trial court erred in convicting him of burglary because there was not sufficient evidence to support a guilty verdict.[1]
The test for sufficiency of the evidence is, when reviewing the evidence in the light most favorable to the prosecution, the evidence should convince any trier of fact that the defendant is guilty beyond a reasonable doubt of the crime of which he was accused of committing. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When circumstantial evidence is used to prove an element of a crime, the evidence will be sufficient when it excludes every reasonable hypothesis of innocence. La.R.S. 15:438. Furthermore, possession of recently stolen property is not by itself sufficient proof that the possessor committed the burglary. State v. Peters, 468 So.2d 1342 (La.App. 1st Cir. 1985).
In the instant case, defendant was in possession of the stolen property. When the police officer entered the bank, defendant ran out the door in an attempt to escape. This action indicates that defendant had knowledge that the items were stolen.
On the day between the dates of the two burglaries, defendant approached the victim, a man with whom he had never spoken with previously, and questioned him about why he was not at work. One can infer from the defendant's questioning that he wanted to know why the victim was not away from his home.
The next day when the victim did go to work, the house was again burglarized.
*581 The defendant's previous actions indicate that he was trying to discover when he could again burglarize the victim's home. Subsequently, the same person who questioned the defendant regarding why he was not at work, appears at the victim's bank in possession of recently stolen papers.
The evidence establishes more than just a bare assertion that defendant was in possession of stolen property. The evidence demonstrates that defendant had knowledge that the property was stolen and when the victim would not be at his home. This is sufficient to rebut any reasonable hypothesis of innocence regarding how defendant came into possession of stolen papers. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 2
Appellant's second assignment of error alleges that the trial court erred in permitting the introduction of other crimes evidence. Appellant claims that the State was permitted to prove that he was apprehended while trying to cash a check belonging to the victim, thus establishing the crime of forgery. Appellant also complains of a reference by one of the witnesses regarding other forgery charges against appellant.
The first complaint defendant has is that the jury was allowed to hear that he attempted to cash a check on the victim's account. The jury heard this on two instances: (1) during the opening statement, and (2) during the testimony of two witnesses. During the prosecution's opening remarks, the jury was informed:
That is what the State is going to show that he acquired those documents, that he presented those documents to use them to acquire additional funds at the bank....
During the testimony of witness Hilma Dupre, the following statements were made:
Q. All right. What did you observe personally happeningwithout anybodywithout telling us what anybody saidwhat did you observe?
A. I observed that he came inhe wanted some money out of the account.
Lastly, the jury heard the following testimony from witness Kim Manuel:
Q. All right, whatdid that person come into the bank that day?
A. Yes, sir.
Q. What did they indicate they wanted?
A. To cash a check.
Q. Anduhdid you do anything to ascertain whether or not that check could be cashed?
A. (No response).
Q. What did you do when asked to cash the check?
A. I took the check and I checked it out on the computer, but we had a caution on iton the account.
Evidence of other crimes committed by an accused is not admissible because it may lead the jury to conclude that the defendant is guilty of the instant crime because he is a bad person who has committed other crimes. In the instant case the prosecutor did not use the other crimes evidence simply to show that defendant was a bad person. The evidence was offered to show the circumstances leading to defendant's apprehension, that he was in possession of the stolen papers and that he was attempting to obtain the value of the property he stole. The evidence offered constitutes part of the res gestae of the crime and, as such, is admissible.
In State v. Roberson, 454 So.2d 343 (La. App. 4th Cir.1984), the prosecutor mentioned to the jury that police officers would testify that they received information that the defendant was manufacturing Angel Dust. The defendant, pursuant to La.Code Crim.Proc. art. 770, requested a mistrial based on the prosecutor's reference to another crime since the defendant was only on trial for possession. The appellate court, concluding that this was not a reference to another crime, held,
We conclude that the prosecutor's reference to the informant's statement about manufacture of the drug at the Poitevant Street premises does not constitute *582 a reference to another crime by the defendant, but merely sets forth the circumstances underlying the issuance of the search warrant based on probable cause that led to the seizure of the large amount of phencyclidine and defendant's arrest. As such, it was part of the res gestae of the crime charged. Id. at 347-48.
In State v. Jackson, 450 So.2d 1053,1055 (La.App. 1st Cir.1984), the Court stated:
The prohibition against references to inadmissible evidence of other crimes under article 770 does not include evidence of words or actions which form a part of the res gestae. State v. Brown, 428 So.2d 438 (La.1983); LSA-R.S. 15:447. To constitute res gestae, those actions or words must be necessary incidents of the criminal act or immediate concomitants of it, or form in conjunction with it one continuous transaction. LSA-R.S. 15:448.
In Jackson, the court allowed the State to introduce money and car keys taken from the victim during a rape.
In the instant case, cashing the check at the bank constituted part of the entire transaction of attempting to obtain something of value by burglarizing the victim's residence. The district attorney, in order to prove a burglary, needed to prove that defendant had the intent to commit a theft. One of the elements of theft is that something of value be taken. The papers defendant took had value, but that value could only be realized when they were presented at the bank for the purpose of withdrawing money.
The burglary, the attempted check cashing, and defendant's eventual arrest constitute one continuous transaction. Thus, all these events constitute the res gestae of the crime. The trial court did not err in admitting the evidence.
The defendant additionally contends that the prosecution against him should have been dismissed because of another remark made during the cross-examination of Hilma Dupre. During the cross-examination of Ms. Dupre, the jury heard the following colloquy:
Q. Ms. Dupre, on December the 18th of 1984, did you know somebody named Pierre Edouard?
A. Yes.
Q. How did you know him?
A. Cause he triedhe came in and forged another guy check on him.
This was not a reference made by the State or the Court, and therefore, a mandatory mistrial under article 770 is not warranted. State v. Wingo, 457 So.2d 1159 (La.1984).
Defendant also contends that the prejudicial effect was great and that the mistrial should have been granted pursuant to La. Code Crim.Proc. art. 771. This was not a bad faith attempt by a witness to interject evidence of other crimes into the record to damage defendant's character. It was a legitimate response to the question of how the witness could be so positive about the accuracy of her identification of defendant. Any negative impact of the witness's statement was diminished by the following admonition:
Ladies and gentlemen, under the law, reference to another crime committed or alleged to have been committed by the defendant is not admissible evidence. Accordingly, the last answer of the witness will be disregarded in determining guilt or innocenceyou'll put it out of your mind. However, it may be considered as an evidentiary fact in establishing identification.
In State v. Jones, 451 So.2d 1181, 1184 (La.App. 1st Cir.1984), the following colloquy took place during the cross-examination of a State witness:
Q. I understand. I think you said earlier you wanted to reaffirm and find out whether or not
A. Yeah.
Q. Everything was going to be peaceful between you all?
A. Right.
Q. Why was that important?
A. I just wanted to make sure because like I said I wanted to make peace with him because a week or twoa month or two before I got shot, he *583 had shot up another guy two times. And so I didn't want the same thing to happen to me. That is why like I said, when I heard the rumor about him, you know, disliking me I said I wanted to make sure. I wanted to be safe. [Defense objected and moved for a mistrial].
The trial court admonished the jury rather than granting a mistrial. The appellate court affirmed, holding that it was within the trial judge's discretion to grant a mistrial if he believed an admonition would be insufficient to assure the defendant a fair trial, but that an admonition would be appropriate absent an abuse of discretion. The Court also held "an admonition is sufficient to cure any prejudice resulting from a prosecution witness's remark concerning evidence of other crimes of defendant, as to which evidence would not be admissible, where the witness's remarks were elicited by defense counsel and there was no specific intention to prejudice defendant." Id. at 1184.
The instant case is on point with Jones. The defense attorney elicited the response which brought in evidence of other crimes. There was no specific intent to prejudice the defendant. The admonition was sufficient to cure any prejudice. There was no error in denying the motion for a mistrial.

ASSIGNMENT OF ERROR NO. 3
Appellant claims the trial court erred by imposing an excessive sentence.[2]
Article 1, Section 20 of the Louisiana Constitution prohibits the imposition of cruel and unusual punishment. A sentence is unconstitutionally excessive if it is nothing more than a needless imposition of pain and suffering. State v. Thomas, 447 So.2d 1053 (La.1984). In determining whether a sentence is excessive, the Court should consider whether the penalty is so disproportionate to the crime as to shock one's sense of justice. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence within the statutory range may be excessive when considered in light of the individual defendant and the circumstances of the crime. A trial court is given broad discretion in imposing sentences and those decisions will not be disturbed absent an abuse of discretion.
The potential sentence for simple burglary of an inhabited dwelling is imprisonment at hard labor for not less than one year without benefit of parole, probation or suspension of sentence nor more than twelve years. In the instant case, defendant was convicted of two counts of simple burglary of an inhabited dwelling. He faced a possible sentence of twenty-four years imprisonment. Defendant was sentenced to ten years imprisonment on one count and five years probation on the second count. This is within the statutory limit.
The trial judge considered this a serious crime because this type of burglary involves a possibility of danger to human life. He noted that defendant had numerous misdemeanor offenses and found it very likely that defendant would commit other crimes if not incarcerated. The only mitigating factor was that this was defendant's first felony conviction. It cannot be said that the trial judge abused his discretion by imposing this sentence. This assignment of error lacks merit.
For the above and foregoing reasons, the conviction and sentence of Pierre Edouard are affirmed.
AFFIRMED.
NOTES
[1] Although reviewing courts are obligated to follow the Jackson standard as mandated by the Louisiana Supreme Court, the author of this opinion has expressed opposition to this standard because it relegates the reviewing power of the appellate courts to nothing more than "second guessing" the triers of fact. See my concurring and dissenting opinions in: State v. Gatson, 434 So.2d 1315 (La.App. 3rd Cir.1983); State v. Anderson, 440 So.2d 205 (La.App. 3rd Cir.1983); and State v. Bryan, 454 So.2d 1297 (La.App. 3rd Cir.1984), writ denied, 458 So.2d 128 (La.1984).
[2] The author of this opinion is compelled to again state his position as to appellate review of sentences for excessiveness. Our state constitution does not provide for nor does it mandate judicial review of sentences which fall within the limits set by the respective criminal statutes. See, State v. Goodman, 427 So.2d 529 (La.App. 3rd Cir.1983), concurring opinion at 533; State v. Vallare, 430 So.2d 1336 (La.App. 3rd Cir. 1983), concurring opinion at 1339, writ denied, 433 So.2d 729 (La. 1983); State v. Shelby, 438 So.2d 1166 (La.App. 3rd Cir.1983), concurring opinion at 1169; and State v. Rainwater, 457 So.2d 1280 (La.App. 3rd Cir.1984), concurring opinion at 1282.