522 So.2d 579 (1988)
STATE of Louisiana
v.
Robert MADDOX.
No. 87 KA 0887.
Court of Appeal of Louisiana, First Circuit.
February 23, 1988.
Rehearing Denied April 5, 1988.
*580 Walter Reed, Dist. Atty., Covington, William R. Campbell, Attorney for the State, New Orleans, for State.
Bernard Jack Usprich, Indigent Defender, Covington, for Maddox.
Before WATKINS, CARTER and FOIL, JJ.
WATKINS, Judge.
Robert Maddox was charged by indictment with second degree murder, in violation of LSA-R.S. 14:30.1. He pled not guilty and not guilty by reason of insanity. After trial by jury, the defendant was found guilty as charged. He received the mandatory sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendant has appealed, alleging three assignments of error, as follows:
1. The trial court erred in finding the defendant competent to stand trial.
2. The trial court erred in denying the defendant's motion for new trial.
3. The evidence was insufficient to sustain the defendant's conviction of second degree murder.
Assignment of error number one was not briefed on appeal and, therefore, is considered abandoned. Uniform Rules Courts of Appeal, Rule 2-12.4.

FACTS
Shortly before 10:00 A.M. on September 5, 1985, Mark Begue arrived to open his place of business, Ozone Buy & Sell, located in Covington, Louisiana. When Mr. Begue arrived, the defendant was outside waiting for the pawn shop to open. After thirty to forty minutes of bargaining, the defendant traded some power tools, a microwave oven, a phonograph, and some cassettes in exchange for a Ruger .357 magnum handgun and some ammunition. After filling out the necessary paperwork for the firearm purchase and a bill of sale, the defendant left the pawn shop and drove his pickup truck to his wife's place of employment, the Folsom Thoroughbred Training Center, located in Folsom, Louisiana. When the defendant arrived, his wife, Barbara Maddox, was apparently wrapping the front legs of a horse with bandages. The defendant walked straight to the barn where his wife was working, entered, and shot her three times with the pistol. Several people heard and/or witnessed the shooting and saw the defendant leaving the barn with the pistol in his hand.
A veterinarian, Dr. Rod Hartwich, was standing outside the barn when the shooting occurred. The defendant walked up to him and handed him the pistol, stating: "Hey, Doc. I think you better take this. I *581 just killed my wife." Dr. Hartwich placed the pistol inside his truck and turned it over to the police when they arrived. The defendant walked over to his truck and drank several beers before the police arrived and arrested him. The shots fired by the defendant had struck Barbara Maddox in the head and torso and she was pronounced dead at the scene.
After his arrest, the defendant made a tape recorded statement about the shooting. He stated that his wife had left him approximately three weeks earlier and was living with another man. He explained that he shot her after several unsuccessful attempts to persuade her to return home. He stated that he had been drinking a lot of beer and had not slept for three days. Finally, he stated that he "really did love [his] wife ..." and that he wanted to "terminate" his life. Although the defendant did not testify at the trial, this taped statement was introduced into evidence as Defense Exhibit 1.
ASSIGNMENTS OF ERROR NUMBERS TWO AND THREE:
In assignment of error number three, the defendant contends that there was insufficient evidence for a rational trier of fact to find him guilty beyond a reasonable doubt. In assignment of error number two, the defendant contends that the trial court erred in denying his motion for a new trial, based on the insufficiency of the evidence.
At the outset, we note that in order to challenge a conviction on the basis of insufficiency of the evidence, the defendant should have proceeded by way of a motion for post verdict judgment of acquittal. See LSA-C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir. 1983). Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error.
The standard of review for the sufficiency of evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. See LSA-C. Cr.P. art. 821; State v. Korman, supra. At the trial, the defendant offered the expert testimony of a psychiatrist, Dr. Albert Devillier. Dr. Devillier testified that the defendant was "a very emotional person." He noted that the defendant had attempted suicide by taking an overdose of pills while in jail awaiting trial. He testified that the defendant's history indicated that the defendant loved his wife and was very depressed when they separated. Dr. Devillier also testified that the defendant was an alcoholic and that his depressed state contributed to his alcohol abuse problem. Dr. Devillier opined that the defendant's emotional stress and his drinking problem would cause him to "have less control to act appropriately to the situation if he's been drinking." However, Dr. Devillier testified that the defendant knew the difference between right and wrong at the time of the shooting.
The defendant does not deny that he shot and killed his wife. Nor does he rely on the defense of intoxication to argue that he lacked the specific intent necessary to commit second degree murder.[1] Rather, he contends that the expert testimony of Dr. Devillier established that "the act was one *582 of sudden passion before his blood had cooled and thus a manslaughter...." LSA-R.S. 14:31 provides, in pertinent part:
Manslaughter is: (1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or....
The existence of "sudden passion" and "heat of blood" are not elements of the offense but, rather, are factors in the nature of mitigating circumstances which may reduce the grade of homicide. State v. Tompkins, 403 So.2d 644 (La. 1981). Having found the elements of second degree murder, the jury then had to determine whether the circumstances indicated that the crime was actually manslaughter. State v. Smith, 490 So.2d 365, 370 (La.App. 1st Cir.), writ denied, 494 So.2d 324 (La.1986); State v. Rayford, 476 So.2d 961 (La.App. 1st Cir.1985). Because the question of provocation is one of fact, the jury must determine whether the offender's blood had actually cooled, or whether the average person's blood would have cooled. State v. Smith, supra; State v. Rayford, supra. Thus, the issue remaining is whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by a preponderance of the evidence. State v. Ducksworth, 496 So.2d 624, 630 (La.App. 1st Cir.1986); State v. Lombard, 486 So.2d 106, 111 (La.1986).
The jurors were aware of the possibility that they could return a responsive verdict of manslaughter. However, the jury verdict of guilty in this case demonstrates that the jury concluded either: (1) that there was not sufficient provocation to deprive an average person of his self-control and cool reflection, or (2) that an average person's blood would have cooled by the time the defendant shot the victim.
The jury concluded that this was a case of second degree murder. We have carefully reviewed the record and find that the evidence supports the jury's determination. We are convinced that, when the evidence is viewed in a light most favorable to the state, a rational trier of fact could have concluded beyond a reasonable doubt that the defendant was guilty of the second degree murder of his wife. See State v. Booker, 444 So.2d 238 (La.App. 1st Cir. 1983), writ denied, 446 So.2d 1227 (La. 1984).
For the above reasons, these assignments of error are meritless.
The conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] In pertinent part, LSA-R.S. 14:30.1 defines second degree murder as: "[T]he killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm; ...." LSA-R.S. 14:10 defines specific intent: "(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."

Specific intent is a state of mind which need not be proven as a fact but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Boyer, 406 So.2d 143 (La.1981); State v. Kennedy, 494 So.2d 550 (La.App. 1st Cir.), writ denied, 495 So.2d 290 (La. 1986). The manner in which the defendant commited this offense leaves no doubt that he had a specific intent to kill or inflict great bodily harm upon his wife. The defendant went to a pawn shop and traded in some tools and household appliances for a .357 magnum pistol and some ammunition. He immediately drove to his wife's place of employment, exited his truck, walked into the barn where she was working, and fired three times, striking her in the head and torso.